IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| DINO J. KALANDRAS, | * |
| Plaintiff, | * |
| | * Civil Action No. WMN-12-2577 |
| MURPHY, BIRD & PHILLIPS, INC., | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF MURPHY, BIRD & PHILLIPS, INC.'S MOTION TO DISMISS

Defendant, Murphy, Bird & Phillips, Inc. ("Murphy, Bird & Phillips"), by and through its attorneys, JoAnne Zawitoski, Colleen K. O'Brien, and Semmes, Bowen & Semmes, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, hereby submits this Memorandum of Law in Support of its Motion to Dismiss, and, in support thereof, states as follows:

### I.   INTRODUCTION

On or about December 19, 2011, Plaintiff Dino J. Kalandras ("Kalandras") filed a Jones Act suit against Brawner Builders, Inc. ("Brawner") in this Court (Civil Action Number WMN 11 CV 3642) (the "Jones Act suit"), alleging that he was employed by Brawner as a crew member aboard its vessels and that he was injured on September 14, 2011 while lifting an engine cover on a boat operated by Brawner. Brawner answered the Complaint, denying liability, and filed a Petition to Limit its Liability to the value of the boat in question on the night of the alleged accident, captioned as *In the Matter of the Complaint of Brawner Builders, Inc. as Owners Pro Hac Vice of the Bayliner 2352 Power Boat (Hull # USCA70FSD292) for Exoneration from or Limitation of Liability*, Civil Action No. WMN 12 CV 538 (the "Limitation suit"). Both of these suits were consolidated for fact

discovery and for mediation pursuant to this Court's Order of July 20, 2012. Mediation has been scheduled before the Honorable Paul Grimm for October 24, 2012.

During discovery in the aforementioned suits, Brawner revealed that at all relevant times, it was acting as a subcontractor to its sister company, Murphy, Bird & Phillips, which had a contract with the Maryland Transportation Authority ("MdTA") for structural repairs to the Chesapeake Bay Bridge in Annapolis, Maryland. Brawner produced excerpts of contract No. MA-2340-000-002 between Murphy, Bird & Phillips and the MdTA (the "Bridge Contract")[1], as well as the subcontract between Murphy, Bird & Phillips and Brawner. A copy of the full Bridge Contract is attached hereto as Exhibit A.

In an apparent attempt to circumvent the Limitation of Liability suit, Kalandras has now filed a second suit against Murphy, Bird & Phillips, based on an identical set of underlying facts as his Jones Act suit, claiming an alleged breach by Murphy, Bird & Phillips of its warranty of workmanlike service under the Bridge Contract. However, as is more fully discussed below, Kalandras' Complaint against Murphy, Bird & Phillips must be dismissed under Fed. R. Civ. P. 12 (b)(1) and 12(b)(6), because: (1) Kalandras has failed to establish that the Bridge Contract is within this Honorable Court's admiralty and maritime subject matter jurisdiction as set forth in 28 U.S.C. § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure; and (2) even assuming that admiralty and maritime jurisdiction could be established, Kalandras has failed to state a claim that would entitle him to relief.

---

[1] We understand that Kalandras thereafter obtained a full copy of the Bridge Contract from the MdTA pursuant to a Maryland Information Act request.

2

## II.     FACTS

On or about September 14, 2011, Kalandras allegedly suffered an injury to his back while working as a Safety Boat Operator for Murphy, Bird & Phillips on a construction project at the Chesapeake Bay Bridge in Annapolis, Maryland.  Kalandras claims that the incident occurred while he was working aboard a 22-foot, 7-inch Bayliner Power Boat (Hull ID # USCA70FSD292) (the "Vessel") in the course of his employment by Brawner.  Specifically, Kalandras alleges that he sustained injury as the boat operator while he "performed the deckhand function of lifting the engine cover that did not have a safety rope." (Compl. ¶ 7).  Insisting that the Bridge Contract is, in part, a maritime contract (Compl. ¶ 5), Kalandras claims that he was a foreseeable third party that would not have been injured had Murphy, Bird & Phillips provided a deckhand for the 22 ft. power boat under the Bridge Contract.  (Compl. ¶ 8-9).

Under the terms of the Bridge Contract, Murphy, Bird & Phillips was expected to provide to the MdTA "labor, equipment, materials, etc.[,] necessary in performing miscellaneous structural and other types of repairs, upgrades, replacements, and new construction as directed by the Engineer." (See Exhibit A, page 8 at (a)-(r)).   However, as the attached Affidavit of Kevin Weber of the MdTA attests, and contrary to Kalandras' unfounded assertion, the MdTA did not mandate that Murphy, Bird & Phillips, Inc. provide either a "Boat Captain" or "Deck Hand" under the Bridge Contract.  (See Exhibit B, Kevin Weber Aff. ¶ 7).  Rather, it was left up to Brawner to decide when and if to provide a boat and any crew in connection with the bridge repairs.  Id. at ¶ 5.

## III.     APPLICABLE LEGAL STANDARDS

In any cause of action, the plaintiff has the burden of proving that subject matter jurisdiction exists. Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir.

3

1991). A district court should grant a Rule 12(b)(1) motion to dismiss if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Hup Aik Huat Trading Pte Ltd. v. 900 Bags of Malabar Garbled Black Pepper in Ocean Shipping Containers Nos. TRIU3419945, MSCU2624506, & TPHU6233345, 115 F. Supp. 2d 529 (D. Md. 2000).

A motion to dismiss filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009). Plaintiffs may proceed into the litigation process only when their complaints are justified by both law and fact. Id. at 193. To survive a Rule 12(b)(6) motion to dismiss, a claimant must allege, with well-pleaded, non-conclusory facts, that he is entitled to relief. Id. A claimant's failure to"cross the line between possibility and plausibility of entitlement to relief" renders the complaint legally insufficient. Id.

## IV. ARGUMENT

### A. Plaintiff's Complaint Should be Dismissed For Lack of Subject Matter Jurisdiction Under 28 U.S.C. § 1333, Because the Bridge Contract is not a Maritime Contract

Since both Murphy, Bird & Phillips and Kalandras are Maryland citizens, no diversity jurisdiction can lie in this case. Hence, Kalandras' sole basis for subject matter jurisdiction is a claim that admiralty jurisdiction lies under 28 U.S.C. § 1333 because the Bridge Contract is an alleged maritime contract "in part." (Compl.¶5). Kalandras claims that the Bridge Contract is a maritime contract "in part," because one section of one page out of the entire 188- page contract to repair the Chesapeake Bridge refers to a boat, boat operator and deckhand. (Compl. at ¶ 4.) However, this is insufficient as a matter of law to establish the Bridge Repair contract as a maritime contract.

Maritime contract jurisdiction "depends upon the nature and subject matter of the contract." Sanderlin v. Old Dominion Stevedoring Corp., 385 F.2d 79, 81 (4th Cir. 1967) (citing North Pacific

SS v. Hall Bros. Co., 249 U.S. 119 (1919)).  Whether a contract dispute lies within a court's admiralty or maritime jurisdiction depends "on whether the principal objective of [the] contract is maritime commerce." Baltimore Line Handling Co. v. Brophy, 771 F. Supp. 2d 531, 538 (D. Md. 2011) (citing Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14, 25 (2004)).  To qualify as a maritime contract, the elements of the contract must "pertain directly to and be necessary for commerce or navigation upon navigable waters."  Ambassador Factors v. Rhein-, Maas-, Und See-Schiffahrtskontor GMBH (Vormals Sanara Reedereikontor GMBH), 105 F.3d 1397, 1399 (11th Cir. 1997). See Exxon Corp. v. Cent. Gulf Lines, Inc., 500 U.S. 603, 610 (1991) (stating that in determining whether a contract falls within admiralty jurisdiction, "the true criterion is the nature and subject-matter of the contract, as whether it was a maritime contract, having reference to maritime service or maritime transactions.").

Contracts to build and repair bridges are routinely held not to be maritime contracts.  See Weiss v. Granite Const. Co., 1:07CV1087 LG-JMR, 2009 WL 3334620 (S.D. Miss. Oct. 14, 2009) ("activity of bridge construction cannot be said to be 'so substantially related to activity traditionally subject to admiralty law' that imposing admiralty jurisdiction would be warranted."); see also In re Katrina Canal Breaches Litig., 324 F. App'x 370 (5th Cir. 2009) ("activity involving local drainage cannot be said to be 'so [substantially] related to activity traditionally subject to admiralty law' that imposing admiralty jurisdiction would be warranted.").

Here, the terms of the Bridge Contract clearly establish that it is not a maritime service contract because the work to be performed does not pertain to maritime commerce or navigation upon navigable waters.  The principal objective of the Bridge Contract, by its own terms, is the repair or replacement of piers, bridge beams, girders, abutments, toll booths, noise walls, and other

5

land-based appurtenances of the Authority's facilities. See Exhibit A, page 8 at (a)-(r). Kalandras baldly asserts that the Bridge Contract is "in part" a maritime contract, based solely on an isolated reading of two sections on one page of that 188-page contract, Sections 400.01.01(4) and 400.01.01(5). See Exhibit A at p. 57. Kalandras cites to no provisions of the Bridge Contract that directly pertain to maritime commerce or navigation upon navigable waters, nor can he, because a plain reading of the contract reveals that there is no such mention. See Exhibit A.

Moreover, contrary to Kalandras' assertion in paragraph 4 of his Complaint herein, under the terms of the Bridge Contract, the MdTA did not mandate that Murphy, Bird & Phillips provide a "Boat Captain" or "Deck Hand." Rather, Sections 400.01.01(4) and 400.01.01(5) of the Contract merely serve as labor classification items that provided the suggested labor rates for a "Boat Captain" and "Deck Hand," should Murphy, Bird & Phillips decide to use either. See Exhibit B, Weber Aff. at ¶ 6. The MdTA hired Murphy, Bird & Phillips to provide labor, equipment, and materials necessary to perform structural repairs, upgrades, replacements, and new construction to bridges, tunnels, highways, buildings, and other land-based appurtenances of the Maryland Transportation Authority's facilities. See Exhibit B, Weber Aff. at ¶ 4. Any billing and use of a "Boat Captain" or safety boat was "an incidental part of the overall Contract" between Murphy, Bird and the MdTA, and "only accounted for a small fraction of all revenues paid" to Murphy, Bird & Phillips under the Contract. See Weber Aff. ¶ 8.

Kalandras' attempt to transform a 188-page land-based construction contract into a maritime service contract by parsing out incidental mentions of the words "Boat Captain" and "Deck Hand"contravenes the purpose of maritime jurisdiction. Because Kalandras has not met his burden of establishing maritime jurisdiction, this action must be dismissed pursuant to Federal Rule of Civil

Procedure 12(b)(1) for lack of subject matter jurisdiction.

     B.    **The Claim for Breach of Warranty of Workmanlike Performance Is Not A Claim Upon Which Relief Can Be Granted to Kalandras**

The warranty of workmanlike performance is an implied promise by one who undertakes to perform a service aboard a vessel that he or she will "perform in a workmanlike fashion." See Commercial Union Ins. Co. v. Bohemia River Associates, Ltd., 855 F. Supp. 802, 806 (D. Md 1991). The warranty only applies to maritime service contracts. See, e.g., Fairmont Ship. Corp. v. Chevron Internat'l. Oil Co., 511 F.2d 1252 (2d Cir. 1975) (applying the warranty of workmanlike performance in towage context); Tebbs v. Baker-Whiteley Towing Co., 407 F.2d 1055 (4th Cir. 1969) (applying the warranty of workmanlike performance in towage context); H&H Ship Service Co. v. Weyerhaeuser Line, 382 F.2d 711 (9th Cir. 1967) (applying the warranty of workmanlike performance in ship repair context); David Crystal, Inc. v. Cunard Steam-Ship Co., 339 F.2d 295 (2d Cir. 1964) (applying the warranty of workmanlike performance in misdelivered goods context).

In the maritime service context, the warranty only applies to vessel owners seeking indemnity from third party service providers for unseaworthy conditions aboard the vessel created by the third party, where suit is brought against the vessel owners by a seaman. See 1 THOMAS J. SCHOENBAUM, Admiralty and Maritime Law 306 (5th ed. 2011) (*citing* Aparicio v. Swan Lake, 643 F.2d 1109 (5th Cir. 1981); Purnell v. Norned Shipping, 801 F.2d 152 (3d Cir. 1986), *rehearing denied* 804 F.2d 248 (3d Cir. 1986); Parks v. United States, 784 F.2d 20 (1st Cir. 1986); Cormier v. Oceanic Contractors, Inc., 696 F.2d 1112 (5th Cir. 1983)). Courts have not applied the warranty of workmanlike performance beyond the provision of maritime services to a shipowner that create defects or dangers on a ship. See In Re Eternity Shipping, Ltd. Eurocarriers, S.A. for Exoneration from or Limiation

7

of Liab., 444 F. Supp. 2d 347 (D. Md. 2006).

Here, Kalandras' claim for breach of warranty of workmanlike performance fails, as a matter of law, for two reasons.  First, the implied warranty does not apply here because the Bridge Contract is not a maritime service contract.  See discussion at IV.A, *supra.*  Second, even assuming that the Bridge Contract was a maritime contract, Kalandras is not the proper party to bring a claim for breach of the warranty of workmanlike performance.  The warranty provides relief to shipowners who seek indemnification for the negligent acts of third parties.  See Aparicio v. Swan Lake, 643 F.2d 1109 (5th Cir. 1981); Purnell v. Norned Shipping, 801 F.2d 152 (3d Cir. 1986), rehearing denied 804 F.2d 248 (3d Cir. 1986); Parks v. United States, 784 F.2d 20 (1st Cir. 1986); Cormier v. Oceanic Contractors, Inc., 696 F.2d 1112 (5th Cir. 1983).  Here there is no shipowner, save for Brawner Builders, Inc., the owner *pro hac vice* of the Vessel, but Brawner is also the service provider, so the warranty has no applicability in the context of the Bridge Contract.  Kalandras is neither a party to the Bridge Contract, nor is he a third party beneficiary of that contract.  Hence, Kalandras cannot, as a matter of law, seek indemnification under the Bridge Contract.

In short, because the Bridge Contract is not a maritime contract to which the warranty of workmanlike performance applies, and because Kalandras is not the proper party to seek indemnification under the warranty of workmanlike performance in any event, his claim is not cognizable as a matter of law.  See Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009) (claim that does not plead facts that would entitle relief to the claimant is legally insufficient and must be dismissed).  Accordingly, Kalandras' Complaint against Murphy, Bird & Phillips  must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

### C. Murphy, Bird and Phillips Should Be Awarded Its Costs of Defending Against This Frivolous Complaint.

Even cursory legal research on the part of Kalandras should have revealed that there was no basis whatsoever in the law for a seaman to assert a claim for breach of warranty of workmanlike service against his employer in connection with a land-based bridge repair contract between the employer and a third party, where the seaman is neither a party to nor intended third party beneficiary of that contract.  Obviously, this second complaint of Kalandras against Murphy, Bird & Phillips is nothing more than a transparent attempt to avoid the consequences of Brawner's Limitation suit. To date, Murphy, Bird & Phillips has expended approximately $4,760 in legal fees to defend against this frivolous and unsubstantiated Complaint, see Exhibit C, Affidavit in Support of Attorney's Fees, and is therefore entitled to an award of its defense costs should the Motion to Dismiss be granted.

### V. CONCLUSION

For all of the foregoing reasons, Murphy, Bird & Phillips respectfully request that this Honorable Court dismiss the Complaint with prejudice, award to Murphy, Bird & Phillips its reasonable attorney's fees in the amount of $4,760, to date, in defending against this the frivolous and unsubstantiated Complaint, and grant such other and further relief as the justice of this cause may require.

9

       Respectfully submitted,

       _____/s/_____
       JoAnne Zawitoski (Fed Bar No. 00698)
       Colleen K. O'Brien (Fed Bar No. 29839)
       Semmes, Bowen & Semmes
       25 South Charles Street, Suite 1400
       Baltimore, MD 21201       T           :
       410-539-5040
       F: 410-539-5223
       jzawitoski@semmes.com
       co'brien@semmes.com

       *Attorneys for Murphy, Bird & Phillips, Inc.*

B1273894.WPD